# In the United States Court of Federal Claims

<table>
<tr><td>

BIG WILL TRUCKING, LLC,

           *Plaintiff,*

v.

THE UNITED STATES,

           *Defendant.*

</td><td>

No. 25-280<br>
(Filed: November 20, 2025)

</td></tr>
</table>

*Deshonda Charles*, D. Charles Law Firm, Houston, TX, for Plaintiff.

*Alexander Brewer*, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

      In July 2021, Defendant U.S. Postal Service ("Postal Service" or "USPS") awarded Plaintiff Big Will Trucking, LLC ("Big Will Trucking") a four-year procurement contract ("Contract") to transport mail between certain Postal Service facilities. Am. Compl. ¶ 10, ECF No. 15; Def.'s App. at 1, ECF No. 16-1.[1] After some of the mail was allegedly lost or stolen during transport, USPS imposed penalties on Plaintiff in October 2022. Pl.'s Exs. (BWT-1) at 1–2, ECF No. 24-1.[2] USPS later exercised its right to terminate the Contract early on sixty days' notice and provided Plaintiff written notice of termination on August 18, 2023. Pl.'s Exs. (BWT-3) at 1.

      On October 21, 2023, sixty-four days after the written notice, USPS terminated the Contract. *Id.* Big Will Trucking filed a claim objecting to this termination with the designated Contracting Officer. Pl.'s Exs. (BWT-11) at 1. After the claim was denied, Plaintiff filed a Complaint in this Court, alleging violations of both the Contract Disputes Act ("CDA") and the Tucker Act. Am. Compl. at 5–7. The Complaint alleges: (1) USPS's termination violated the express terms of the Contract; (2) USPS's termination breached the duty of good faith and fair dealing; (3) USPS's imposition of penalties was unlawful; and (4) USPS's award of a replacement contract was unlawful. *Id.*

---

[1] Subsequent citations to Defendant's Appendix, ECF No. 16-1, will use only Defendant's assigned pagination (e.g., "Appx00").

[2] Subsequent citations to Plaintiff's Exhibits, ECF No. 24-1, will cite to their assigned exhibit number (e.g., BWT-X) and the relevant page within that exhibit.

Pending before the Court is Defendant's Renewed Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) of the Court of Federal Claims ("RCFC").  *See generally* Def.'s Mot. to Dismiss, ECF No. 16 ("Mot.").  For the reasons below, Defendant's Motion to Dismiss is **GRANTED-IN-PART AND DEFERRED-IN-PART**.

First, while the Court has jurisdiction to hear Plaintiff's "breach of contract" claim, Defendant properly exercised its contractual right to terminate the Contract with the required advance notice.  Plaintiff has not alleged facts demonstrating the termination was in bad faith or an abuse of discretion and therefore fails to state a claim.  Second, this Court lacks jurisdiction to consider Plaintiff's allegation of a breach of good faith and fair dealing because this claim was not presented to the Contracting Officer as required by the CDA.  In the alternative, Plaintiff has also failed to state a claim.  Third, Plaintiff fails to state a claim for a bid protest, and any such claim must be dismissed for failing to comply with this Court's rules.

Finally, before ruling on Plaintiff's remaining allegation involving the imposition of penalties for alleged lost or stolen mail, the Court **ORDERS** supplemental briefing on whether this Court has jurisdiction over the claim, as explained below.

## I.     Background and Procedural History

Over the last eighteen years, Plaintiff had recurring contracts with USPS to transport bags of mail between regional processing facilities and local branch distribution offices.  Am. Compl. ¶ 8.  Most recently, on July 1, 2021, Plaintiff began work on Postal Service Contract # 77326, which required mail delivery from the North Houston Central Postal and Distribution Center.  *Id.* ¶ 10; Mot. at 2–3; *see also* Appx10–16.  In August 2023, the Contract's annual rate was approximately $2,002,664.55.  Pl.'s Ex. to Proposed Am. Compl. ("CO Final Decision") at 2, ECF No. 11-1.[3]

The Contract contains two termination provisions: "Termination with Notice" and "Termination for Default."  Appx77.  The "Termination with Notice" provision is a mutual, no-fault termination clause: "If this contract has an annual rate below $2,500,000, the contracting officer or the supplier, on 60 days written notice, may terminate this contract or the right to perform under it, in whole or in part, without cost to either party."  *Id.*  In contrast, the "Termination for Default" provision allows the Postal Service to terminate a contract when "the supplier fails to provide the Postal Service, upon request, with adequate assurances of future performance."  *Id.*  The clause also allows for termination when certain "events of default" have occurred.  *See id.*; Appx66–67 (listing events of default).

---

[3] Plaintiff did not include this or any exhibit with its Amended Complaint, ECF No. 15, despite the Amended Complaint's reference to "an exhibit."  *Id.* at 2.  "The court construes pleadings so as to do justice, and therefore treats the exhibit appended to the Complaint as if it had been appended to the Amended Complaint." *Terry v. United States*, 103 Fed. Cl. 645, 647 n.1 (2012) (citation modified).

In October 2022, USPS contacted Plaintiff about "suspected discrepancies . . . with missing and/or stolen bags." Am. Compl. ¶ 11. Big Will Trucking prepaid $5,847.00 as a penalty based on its own estimate "in an abundance of caution and not as an admission of guilt." *Id.* In a February 22, 2023 letter to Plaintiff, USPS Contracting Officer Raphette Alston (sometimes referred to as Raphette Mines) explained USPS had become aware of "incidents [involving Plaintiff's employees] where Registered Mail bags from USPS facilities were lost and/or stolen." Appx103; *see also* Am. Compl. ¶ 12. The letter requested "(1) adequate assurances that [Plaintiff] has policies and procedures in place to prevent future loss of Registered Mail; and (2) repayment of the $21,537.70 that was lost/stolen, or a reasonable repayment plan for this amount." Appx104.

USPS subsequently deducted the $21,537.70 from its monthly payment to Big Will Trucking. Am. Compl. ¶ 13; *see also id.* This penalty was imposed consistent with the Contract's clause that Plaintiff would be "strictly liable to the Postal Service for the Postal Service's actual damages if mail is subject to loss . . . ." Contract, Appx64; *see also* Appx67–68 ("Deductions may be made from payments otherwise due to the supplier under this contract . . . for any amounts for which the supplier is liable as damages or otherwise.").

Plaintiff replied to Ms. Alston in a February 27, 2023 letter disputing the stolen mail accusations, the imposition of a penalty, and requesting a hearing on the matter. Pl.'s Exs. (BWT-2) at 1–2. The letter claimed the $21,537.70 deduction was made without the opportunity to request a "reasonable repayment plan" as provided for in the Postal Service's letter. *Id.* at 1. Plaintiff also asserted it had already paid $5,847.00 for two of the lost bag incidents in October 2022 and requested that this amount be deducted from the $21,537.70 penalty. *Id.* Plaintiff obtained counsel and sent a follow-up letter on March 17, 2023. *Id.* at 3.

According to Plaintiff, the USPS did not respond to this letter. Pl.'s Resp. ("Resp.") at 2, ECF No. 24; *see also* Am. Compl. ¶ 12. Rather, USPS subsequently terminated the Contract in full, sending a written notice to Plaintiff on August 18, 2023 explaining it would terminate the Contract "pursuant to Clause 4-20(l) (Termination with Notice) . . . effective close of business October 21, 2023." CO Final Decision at 4. As previously noted, this clause provides that for contracts with "an annual rate below $2,500,000, the contracting officer or the supplier, on 60 days written notice, may terminate this contract or the right to perform under it, in whole or in part, without cost to either party." Contract, Appx77. USPS formally terminated the Contract on October 21, sixty-four days after sending its written notice. CO Final Decision at 2.

On August 21, 2023, Mr. Henderson Grover, Plaintiff's owner, emailed Ms. Alston and asked why USPS terminated the Contract. Pl.'s Exs. (BWT-4) at 1. Ms. Alston replied USPS was trying to "move contracts to break through fuel." *Id.* at 2. On August 28, 2023, Ms. Alston invited Plaintiff to bid on the replacement contract, HCR #773M7, and Big Will Trucking did so. Pl.'s Exs. (BWT-5) at 1–2; Am. Compl. ¶ 17. Plaintiff was notified on September 29, 2023 that the replacement contract was awarded to Thunder Ridge Trans, Inc. ("Thunder Ridge"). Pl.'s Exs. (BWT-5) at 4–5.

3

Ten months later, on July 29, 2024, Plaintiff sent an uncertified "letter of protest" challenging, in part, the termination of the Contract and the imposition of penalties.[4] Appx82–83. Plaintiff again argued the Postal Service incorrectly imposed a $21,537.70 penalty without accounting for the $5,847.00 it had already paid for lost bags. Appx82. Ms. Alston construed Plaintiff's letter as a "business disagreement" challenging the award of a contract under 39 C.F.R. § 601.107 and denied it as untimely on August 8, 2024. *See* Contracting Officer Decision, Appx99–100.

On August 11, 2024, Mr. Grover appealed Ms. Alston's denial to the Supplier Disagreement Resolution Officer ("SDRO"). Pl.'s Exs. (BWT-8) at 1. The SDRO affirmed Ms. Alston's denial the following month. Pl.'s Exs. (BWT-12) at 2–3. The SDRO noted it did not have jurisdiction over USPS's termination of the Contract because "[d]isagreements that arise pursuant to a contract under the Contract Disputes Act are explicitly excluded from the definition of disagreements" under USPS's business disagreement regulations, which cover procurement disputes. *Id.* (citing 39 C.F.R. § 601.107(a)(2)(i)).

In a September 5, 2024 letter to Ms. Alston, Mr. Grover requested $3.16 million in "compensation for the early termination of [the Contract] without cause."[5] Appx102. The letter included an "itemized cost list as it relates to" the Contract, including "Emotional Distress/Psychological Damage" and "Financial Damage to Business Credit." *Id.* The letter made no mention of the Postal Service's imposition of penalties. *Id.* Plaintiff sent additional correspondence on September 19, 2024 certifying "the claim is made in good faith." CO Final Decision at 1; Pl.'s Exs. (BTW-10) at 4. Plaintiff later confirmed via email that the September 19 certification letter applied to the September 5 compensation request. CO Final Decision at 1.

Ms. Alston subsequently denied Plaintiff's certified claim on November 18, 2024. *Id.* at 2. Ms. Alston explained the termination was valid under the plain language of the Termination with Notice clause, and Plaintiff "failed to submit any supporting evidence or substantiation of any kind for the $3.16 million in compensation" requested. *Id.* The final decision did not reference the Postal Service's imposition of penalties. *Id.*

Plaintiff filed its Complaint on February 18, 2025, amended on July 29, 2025, alleging violations of both the CDA and the Tucker Act. *See generally* Compl., ECF No. 1; Am. Compl. Plaintiff alleges three claims under the CDA: (1) USPS breached the Contract by failing to follow its stated policies before imposing penalties for the bag discrepancies; (2) terminating the Contract early "for cause" violated the Contract's express and implied terms; and (3) awarding a new contract to Thunder Ridge for a bid higher than Plaintiff's breached "the duty of good faith and fair dealing in the bid process." Am. Compl. at 5–6. Plaintiff also brings claims for

---

[4] Plaintiff also challenged the termination of a separate contract, HCR #77349, not at issue in this action.

[5] Prior to this correspondence, Plaintiff filed suit in this Court over the Postal Service's termination of the Contract and the penalties imposed but later stipulated to a voluntary dismissal without prejudice to pursue its claims before the agency. *See* Stipulation of Dismissal Without Prejudice, *Big Will Trucking, LLC v. United States*, No. 24-1235 (Fed. Cl. Oct. 3, 2024).

"Violations of the Tucker Act," alleging USPS "had no rational basis" for awarding the bid to Thunder Ridge and realleging a breach of the duty of good faith and fair dealing for "the bag discrepancy incident, the for-cause termination of Contract #77326, and the improper bid process for Contract # HCR 77326/773M7." *Id.* at 6–7.

Defendant filed a Motion to Dismiss on May 21, 2025, which it renewed on August 15 after Plaintiff amended its Complaint. ECF No. 7; Mot. Plaintiff filed its Response[6] on September 18, 2025, and Defendant replied on September 30. Resp.; Def.'s Reply ("Reply"), ECF No. 27. Defendant's renewed Motion to Dismiss is now ripe for review.

## II.     Legal Standards

### A.     Jurisdiction

The Tucker Act grants this Court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under" the CDA. 28 U.S.C. § 1491(a)(2); *see also* 41 U.S.C. § 7102(a) (establishing the CDA applies to "any express or implied contract . . . made by an executive agency"); Appx62 (stating that the Contract is "subject to the Contract Disputes Act of 1978"). "If a plaintiff meets the jurisdictional requirements of the Tucker Act, the plaintiff also must demonstrate compliance with the mandatory requirements of the [CDA]." *Crewzers Fire Crew Transp., Inc. v. United States*, 111 Fed. Cl. 148, 153 (2013), *aff'd*, 741 F.3d 1380 (Fed. Cir. 2014). For this Court to exercise jurisdiction over a CDA claim, a contractor must bring an action "within 12 months from the date of receipt of a contracting officer's decision." 41 U.S.C. § 7104(b)(3). Further, jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). If a claim seeks more than $100,000, it must also meet the CDA's certification requirements. 41 U.S.C. § 7103(b)(1).

### B.     Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)

Defendant moves to dismiss the Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim. Mot. at 1.

"In determining jurisdiction [when evaluating a Rule 12(b)(1) motion], a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Id.* "Where a motion to dismiss challenges the complaint's jurisdictional allegations, the allegations in the complaint are not controlling, and only uncontroverted factual

---

[6] In addition to being filed out of time, *see* ECF Nos. 22 & 23, the Response suggests a lack of familiarity with this Court's rules and precedents. For example, the Response cites no cases from this Court and only a single case from the Federal Circuit. *See* Resp. at 12. The Response also cites to the Federal Rules of Civil Procedure, rather than the Rules of the Court of Federal Claims. *Id.* at 4–5; *see also* Am. Compl. ¶ 36 (demanding "a jury on all issues" and claiming to have "submit[ted] the jury fee" despite this Court not holding jury trials).

allegations are accepted as true.  In such a situation, the court may review evidence extrinsic to the pleadings." *van Leeuwen v. United States*, 176 Fed. Cl. 503, 508 (2025) (citation modified).  If the Court lacks jurisdiction over a claim, the claim must be dismissed.  *See* RCFC 12(h)(3).

In evaluating a Rule 12(b)(6) motion, "the court must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff[']s favor." *Ainslie v. United States*, 355 F.3d 1371, 1373 (Fed. Cir. 2004) (citation omitted).  Plaintiff "must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief" to state a valid claim and survive a 12(b)(6) motion. *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (holding alleged facts must "raise a right to relief above the speculative level"); *see also Leider v. United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002) (holding dismissal under 12(b)(6) is proper when a plaintiff "can prove no set of facts in support of its claim which would entitle it to relief" (citation modified)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Terry*, 103 Fed. Cl. at 652 (quoting *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009)).

Additionally, a court "may consider judicially noticeable matters outside the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019).  This includes "matters incorporated by reference or integral to the claim," which here include the Contracting Officer's Final Decision attached to Plaintiff's original Complaint, the appendix attached to Defendant's Motion to Dismiss, and the exhibits attached to Plaintiff's Response. *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Wright & Miller's Federal Practice & Procedure § 1357 (3d. ed. 2004)).  When a disparity exists between the bare allegations of a pleading and an attached exhibit, the exhibit controls. *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325–26 (Fed. Cir. 2016) (citation omitted).

Finally, RCFC 9(k) requires that, in claims based on contracts, a party must either describe the relevant contractual provisions or attach a copy of the contract to the pleading.  Although Plaintiff did not attach the Contract, Defendant's Appendix includes a copy.  *See* Appx1; *see also Terry*, 103 Fed. Cl. at 647 n.1 (relying on copy of the contract in dispute attached to defendant's motion to dismiss and referred to in plaintiff's complaint).

### C. Waiver of Claims

"In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1009 (Fed. Cir. 2018) (quoting *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.Supp.2d 1125, 1132 (C.D. Cal. 2011)); *see also Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 296–97 (2024) (collecting cases).  Plaintiff's Response is almost entirely devoid of substantive responses to Defendant's arguments.  *See, e.g.*, *infra* Section III.A.1.

While the Court proceeds to consider the merits of Defendant's Motion, it finds separately Defendant's Motion should be granted because Plaintiff has not responded to

Defendant's arguments on the claims addressed in this Opinion.  These include: (1) Plaintiff alleged a different "breach of contract" claim to the Contracting Officer than it did in its Amended Complaint; (2) Plaintiff did not adequately present a claim for breach of the duty of good faith and fair dealing to the Contracting Officer; (3) the Amended Complaint fails to state claims for "breach of contract" and breach of the duty of good faith and fair dealing; and (4) Plaintiff fails to state a "bid protest" claim.  *See* Reply at 6, 8, 9–10.  Plaintiff has therefore waived claims related to those arguments.  *See id.* at 9; *Cap Exp., LLC*, 722 F. App'x at 1009.

### III.  Discussion

#### A.  As to Defendant's 12(b)(1) Motion, this Court Has Jurisdiction Over Plaintiff's Wrongful Termination Claim, But Not its Claim for Breach of the Duty of Good Faith and Fair Dealing.

This Court's CDA jurisdiction "requires both that a claim meeting certain requirements [has] been submitted to the relevant contracting officer and that the contracting officer [has] issued a final decision on that claim." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015); *see* 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision."); *Avant Assessment, LLC v. United States*, 171 Fed. Cl. 212, 216 (2024) ("[T]he CDA's claim presentment provision is jurisdictional."), *appeal docketed*, No. 24-2054 (Fed. Cir. July 9, 2024).

A CDA claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." *Zafer Constr. Co. v. United States*, 40 F.4th 1365, 1367 (Fed. Cir. 2022) (quoting 48 C.F.R. § 52.233-1(c)).  A claim need not "be submitted in any particular form or use any particular wording, but it must provide a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *K-Con Bldg.*, 778 F.3d at 1005 (citation modified).  To assess whether a contractor's claim before this Court is "separate" from their claim before a contracting officer, the Federal Circuit has instructed "requests [are] separate claims if they . . . assert grounds that are materially different from each other factually or legally." *Id.*

Count II of Plaintiff's Amended Complaint alleges "Violations of the Tucker Act" based on the same alleged breach of contract raised in Count I.  *Compare* Am. Compl. ¶¶ 25–30, *with* ¶¶ 19–24.  But "[s]ection 609 of the CDA operates in tandem with the Tucker Act to confer jurisdiction over [government contract disputes] on the Court of Federal Claims." *Tex. Health Choice, L.C. v. Off. of Pers. Mgmt.*, 400 F.3d 895, 899 (Fed. Cir. 2005); *see also* 28 U.S.C. § 1491(a)(2).  Because the Contract explicitly states the CDA applies, see Appx62, the CDA is the "exclusive mechanism" for resolution of disputes under the agreement.  *Tex. Health Choice, L.C.*, 400 F.3d at 898 (quoting *Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1017 (Fed. Cir. 1995)).  Plaintiff's Count II alleges a non-CDA Tucker Act violation, and therefore the Court lacks jurisdiction over Count II and must dismiss it.

The Court will address two of the three claims Plaintiff has raised: (1) "breach of contract" based on the termination of the Contract and (2) breach of the duty of good faith and fair dealing. *See* Mot. at 24. The Court defers ruling on the third. *See infra* Section III.D.

### 1. For Cause Termination of the Contract

Defendant argues this Court lacks jurisdiction under the CDA because Big Will Trucking did not adequately present its claim that the termination was allegedly "for cause." Mot. at 13; *see also* CO Final Decision at 1. The Amended Complaint alleges the termination was "for cause." Am. Compl. ¶¶ 23, 27, 29. But its claim to USPS asserted the termination was "without cause." Appx102; CO Final Decision at 1.

Plaintiff does not directly address this argument, despite having the burden to prove this Court's jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (noting the party seeking to establish jurisdiction must demonstrate it by a preponderance of the evidence). Instead, Plaintiff contends it "submitted multiple letters to multiple people in the USPS seeking resolution of [its] complaints" and "[t]he Contracting Office [sic] for USPS sent her final decision on November 18, 2024, confirming that she had received all Plaintiff's letters and considered the prior correspondences to serve as a certified claim."[7] Resp. at 8–9. But this is contradicted by the Contracting Officer's Final Decision attached to Plaintiff's own Complaint. The Final Decision states the Contracting Officer "treated the Compensation Request [Plaintiff's September 5, 2024 letter], as certified by the Certification Letter [Plaintiff's September 19, 2024 letter], as your claim." CO Final Decision at 1. The Contracting Officer did so because, in response to her request for clarification, Mr. Grover confirmed via email on October 22, 2024 that his Certification Letter applied to the Compensation Request. *Id.*

Nowhere in the Compensation Request did Plaintiff say its July 29, 2024 and August 11, 2024 correspondence were part of its claim, and Plaintiff later clarified that its subsequent certification statement was "for the compensation request [the Contracting Officer] received on September 5, 2024." Pl.'s Exs. (BTW-10) at 2, 5. The Contracting Officer's decision did not consider or mention Plaintiff's earlier correspondence, both of which were previously treated as challenges to contract procurement under 39 C.F.R. §§ 601.107 and 601.108 and denied as untimely by both the Contracting Officer and the SDRO. CO Final Decision; Pl.'s Exs. (BTW-12) at 2–3. The Contracting Officer specifically stated only the Compensation Request was being considered. CO Final Decision at 1.

Nonetheless, the termination claim was adequately presented. Plaintiff's underlying claim—that USPS improperly terminated the Contract—has remained the same since its July 29,

---

[7] Plaintiff then argues "in the [a]lternative" a defect in certification does not prevent this Court from exercising jurisdiction. Resp. at 9–10. But Defendant does not dispute Plaintiff's September 19 letter certifying its claim. Appx102; CO Final Decision at 1. Rather, Defendant argues Plaintiff's other correspondence was not part of the claim that was considered by the Contracting Officer. Reply at 4.

8

2024 "Letter of Protest." *See* Pl.'s Exs. (BWT-6) at 2–3.  And to the extent Plaintiff is attempting to now allege USPS improperly terminated the Contract under the Termination with Default clause, the result would not be different because "if it is determined that the Postal Service improperly terminated [the C]ontract for default, such termination will be deemed a termination on notice."  Appx77.  This would ultimately lead to the same analysis and does not change the basis of Plaintiff's claim for CDA jurisdictional purposes.

"The point of CDA presentment is to give the contracting officer sufficient notice to receive and pass judgment on the contractor's entire claim."  *Aries Constr. Corp. v. United States*, 164 Fed. Cl. 290, 296 (2023) (citation modified).  Based on the entirety of Plaintiff's correspondence, Ms. Alston had sufficient notice of the basis of Plaintiff's claim.  *See Appeal of Fuel Storage Corp.*, ASBCA No. 26994, 83-1 B.C.A. ¶ 16,418 (considering contractor's "earlier communications" in determining if contracting officer was on notice of the basis of a CDA claim).  The wrongful termination claim was therefore adequately presented to the Contracting Officer, and this Court has jurisdiction over Plaintiff's claim.

### 2. Duty of Good Faith and Fair Dealing

This Court lacks jurisdiction over USPS's alleged breach of the duty of good faith and fair dealing because Plaintiff failed to present these allegations in a claim to the Contracting Officer.  Plaintiff was not required to specifically allege a breach of the duty of good faith and fair dealing.  However, a contractor must state "the operative facts of a claim for breach of the duty of good faith and fair dealing" to put the contracting officer on notice.  *See RMA Eng'g S.A.R.L. v. United States*, 140 Fed. Cl. 191, 221 (2018).  "[A] claim for breach of good faith and fair dealing must include (1) a specific promise that was undermined, plus some combination of (2) subterfuge, evasion, or dishonesty, and (3) reappropriation of a reasonably expected benefit."  *Aries*, 164 Fed. Cl. at 295.

Plaintiff's Compensation Request stated only that the Postal Service's "early termination" of the Contract was "without cause."  Appx102.  This was not the "clear and unequivocal claim" of a good faith breach § 7103(a) requires.  *Reliance Ins. Co. v. United States*, 931 F.2d 863, 866 (Fed. Cir. 1991); *see also Taino Constr. Grp., LLC v. United States*, 177 Fed. Cl. 730, 744 (2025) ("[A] generalized payment demand is insufficient to put the contracting officer on notice of a claim of breach of the implied duty of good faith and fair dealing . . . .").  Ms. Alston's encouragement to re-bid was not a "specific promise" in the Contract that was undermined.  *See Aries*, 164 Fed. Cl. at 295.  Finally, Ms. Alston encouraged Plaintiff to re-bid prior to Big Will Trucking's CDA claim.  Pl.'s Exs. (BWT-4) at 1.  This is not a case where "the contracting officer's denial of the CDA claim itself supplied the last element of [a claim] for breach of contract and for breach of the duty of good faith and fair dealing."  *Aries*, 164 Fed. Cl. at 297.  Because "a contractor should include breach of the duty of good faith and fair dealing in a CDA claim to the contracting officer when the available facts support it," and Big Will Trucking did not, the Court dismisses this claim for lack of jurisdiction.  *Id.*

**B.    As to Defendant's 12(b)(6) Motion, Plaintiff's Allegations of Wrongful Termination and Breach of the Duty of Good Faith and Fair Dealing Fail to State a Claim.**

"Contract interpretation is a matter of law and thus may be addressed by the Court in resolving a motion to dismiss [for failure to state a claim]." *S. Cal. Edison v. United States*, 58 Fed. Cl. 313, 321 (2003) (citing *Kennedy Heights Apartments, Ltd. I v. United States*, 48 Fed. Cl. 574, 578 (2001)); *see also Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). "In making this assessment, the court must interpret the contract's provisions to ascertain whether the facts plaintiff alleges would, if true, establish a breach of contract." *Bell/Heery*, 739 F.3d at 1330. When interpreting a contract, "if the provisions are clear and unambiguous, they must be given their plain and ordinary meaning." *Id.* at 1331 (citation modified).

The Contract's Termination with Notice clause is unambiguous: "[T]he contracting officer or the supplier, on 60 days written notice . . . may terminate this contract or the right to perform under it, in whole or in part, without cost to either party." Contract, Appx77; *see also id.* (establishing an improper termination by default becomes a termination on notice). The Amended Complaint acknowledges Plaintiff received USPS's notice of termination on August 18, 2023, and the Contract was terminated sixty-four days later, on October 21, 2023. Am. Compl. ¶ 14. Under this provision, the Contracting Officer had broad discretion to terminate the Contract with notice unless Plaintiff demonstrates she made her decision in bad faith or abused her discretion. *See, e.g.*, *Cook Mail Carriers, Inc. v. USPS*, PSBCA Nos. 6583, 6584, 17-1 BCA ¶ 36,692; *Appeals of Erol A. Guvenoz*, PSBCA No. 5150, 06-2 BCA ¶ 33,423. *But see Appeal of Turner*, ASBCA No. 26900, 84-1 BCA ¶ 17,138 at 85,381 (suggesting a mutual termination on notice clause provides an "unfettered right to terminate" if the notice period is met).

The Amended Complaint does not offer any allegation that would meet Plaintiff's "heavy burden" to prove USPS acted in bad faith, and the Response makes no effort to demonstrate one. *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996); *see* Am. Compl. ¶ 29; Resp. at 11–12 (alleging USPS "[u]njustifiably terminat[ed] the [C]ontract 20 months early without cause" without pointing to evidence of bad faith). Plaintiff's bare allegation that Defendant terminated its Contract simply does not amount to "bad faith."

Plaintiff fails to state a claim for a breach of the duty of good faith and fair dealing for similar reasons. "The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). USPS exercised its explicit contractual right to terminate the Contract on sixty days' notice. Contract, Appx77. Without allegations of bad faith, Plaintiff cannot demonstrate those actions defied their "reasonable expectations under the [Contract]." *Precision Pine & Timber*, 596 F.3d at 831.

To the extent Plaintiff alleges bad faith in the replacement contract's procurement, see Am. Compl. ¶ 24; Resp. at 12, that claim is not properly before the Court and would otherwise be dismissed for failure to state a claim. *See infra* Section III.C.

### C. Plaintiff Fails to State a "Bid Protest" Claim and Any Such Claim Was Not Properly Made Under this Court's Rules.

In addition to challenging the termination of the Contract and the imposition of penalties, Plaintiff appears to allege the procurement for the re-bid contract, HCR # 773M7, was improper because it was awarded to Thunder Ridge at a higher bid. *See* Am. Compl. ¶¶ 28, 35. But Plaintiff fails to state a claim, and therefore this allegation must also be dismissed.

It is unclear whether Plaintiff intended to include a formal procurement protest (often referred to as a "bid protest") claim under 28 U.S.C. § 1491(b) in its Amended Complaint. *See* Mot. at 24–25. While the Amended Complaint contains a cursory discussion of the process for the alleged re-bid contract, it fails to otherwise articulate a bid protest claim. Am. Compl. ¶ 17. And the Amended Complaint does not cite § 1491(b), which provides this Court jurisdiction over bid protest claims. *See* Am. Compl. Plaintiff's Response does not address these defects. *See generally* Resp. The Court has no duty "to create a claim which the plaintiff has not spelled out in the pleading." *Scogin v. United States*, 33 Fed. Cl. 285, 293 (1995) (citation modified).

Plaintiff's "bid protest" boils down to two allegations: (1) the Contracting Officer encouraged it to re-bid and (2) Thunder Ridge received a contract despite offering a higher bid price than Plaintiff. Mot. at 26. The Amended Complaint "offers no details about what services the Postal Service sought to procure, how offers were going to be evaluated, how many offerors submitted proposals, how the offers were rated by the Postal Service, [or] whether Thunder Ridge proposed services that differed qualitatively from Big Will Trucking." *Id.* Because Plaintiff "provides no well-pled allegations regarding [USPS's] misconduct, it fails to state a claim related to the procurement process." *Brandt Dev. v. United States*, 177 Fed. Cl. 353, 360 (2025), *appeal docketed*, No. 25-1387 (Fed. Cir. Aug. 27, 2025).

Furthermore, Plaintiff's bid protest is dismissed for failing to comply with the Court's rules. *See* RCFC 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss on its own motion . . . ."). Plaintiff did not comply with the rules for filing bid protest claims under 28 U.S.C. § 1491(b), which include submitting a pre-filing notice to the Department of Justice Commercial Litigation Branch, the Contracting Officer, the awardee, and this Court, as well as properly labeling the action as a "Bid Protest." *See* RCFC 5.5(h) & App'x C, Rule 2.

### D. The Court Defers Ruling on Plaintiff's Claims Involving Penalties Pending Supplemental Briefing.

"[F]ederal appellate courts have observed that the method and timetable for deciding a Rule 12(b) motion is left to the sole discretion of the trial judge . . . ." *In re Downstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 137 Fed. Cl. 712, 712 n.1 (2018) (citation modified), *superseded on other grounds*, 2018 WL 3238734 (Fed. Cl. July 2, 2018). And as

previously noted, "the CDA's claim presentment provision is jurisdictional." *Avant Assessment*, 171 Fed. Cl. at 216. The Court lacks sufficient information at this time to determine if Plaintiff properly presented its claim regarding USPS's imposition of penalties to the Contracting Officer. The Court therefore **ORDERS** the parties to submit supplemental briefing **no longer than twenty pages** addressing the following questions **by Monday, December 8, 2025**:

1) Does Plaintiff's February 27, 2023 letter to Ms. Raphette Alston (Pl.'s Exs. (BWT-2) at 3) and/or Plaintiff's July 29, 2024 "Letter of Protest" (Pl.'s Exs. (BWT-6) at 2–3) constitute a valid "claim" under 41 U.S.C. § 7103 either (a) contesting the imposition of the $21,537.70 penalty or (b) requesting a refund of Plaintiff's alleged penalty overpayment of $5,847.00? *See Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013) ("While a valid claim under the CDA must contain a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim, the claim need not take any particular form or use any particular wording." (citation modified)).

2) Did Ms. Alston or any other USPS contracting officer ever issue a written decision pursuant to 41 U.S.C. § 7103(d) on either the imposition of the penalty or the requested refund?

3) If no written decision was issued, should the Court consider any claim on these issues denied under 41 U.S.C. § 7103(f)(5)?

4) If no written decision was issued, should the Court stay these proceedings "to obtain a decision by the contracting officer?" *Id.*

### IV. Conclusion

Defendant's Motion to Dismiss is **GRANTED-IN-PART AND DEFERRED-IN-PART**. ECF No. 16. The parties shall submit supplemental briefing on the above questions by **Monday, December 8, 2025**.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge